Our third case for argument this morning is Friend v. Decatur. Mr. Bachman. May it please the court. Good morning. Good morning, counsel. I'm privileged to be here today. I always am in this court, but particularly for the client that I'm representing. Mr. Friend is what you would want of an American. He served in the Marines. No criminal record. I think he had a DUI arrest decades ago, but other than that. And on five days ago today, as it happens, February 12th, 2021, was one of the worst days in his life. He was arrested for domestic violence, domestic abuse for a false report by a drunk ex-girlfriend. She reported that Charlie was his boyfriend, but actually was an ex. She was jealous. She was angry. She was drunk and she was injured from a fall on black ice. So she told the officers that in a two hour interview. So maybe that argument won in front of the jury and he was acquitted. But we need to look back to the moment in time and what the knowledge was of Officer Mahan. So let's let's focus on that, because he knew that she had told, I think, the paramedics, Officer Claypool, hospital staff, her daughter, that Friend had beaten her. Right. And she had taken this back, recant a little bit, which is not uncommon with domestic violence victims. And so focus on that moment in time of what Officer Mahan knew and how, why it was objectively unreasonable for him to arrest at that point. And thank you for that question, Your Honor, to get to get me focused on that particular issue. If they had gone, and I've struggled with this since I got the case, if they had gone straight from the hospital, if they had interviewed Miss Hathaway at the hospital and she had given, and I agree, and we discuss in our brief that, of course, women who are subject to, this is a very serious case. The allegations are very serious. Obviously, a woman in many situations will recant and be unsure whether they want to make this kind of allegation. Now, I think there is a difference between a boyfriend and an ex-boyfriend, but... Probable cause. What? Probable cause. Probable cause. That's good. Laser focus here. Yes, thank you. As far as we're at the doorway, that's where Judge Maldonado is asking you to start, because there's no Fourth Amendment violation if there's probable cause. Absolutely. So I think if we talk and focus on the facts from that perspective would be helpful. Okay. Thank you, Your Honor. So the probable cause starts, the analysis starts at the hospital where, as you said, Judge, that Miss Hathaway makes the report. Officer Mahan does, and what I was just briefly starting to say was that if they had gone straight from there based on what she reported and arrested Charlie, that it would be a different case, but it's not that case. Here they went to his home, or they went to his mother's home, and there's the warrantless arrest consent issue. That's a separate claim. They went and they learned from Charlie that he had not committed the crime. He was innocent. They didn't learn from him. Correct. He asserted that. It may have been true. It may have not been true. But here's the twist on that, is that it was the officer, Mahan, who asked, do you have surveillance of 11 to 12? Charlie didn't come prepared with an alibi. The officer probed, as he should do, and Charlie said, But wasn't the timeline, I read the body cam transcript, it was a little all over the place in terms of what Ms. Hathaway, I mean, she didn't even, I think, know what day it was, so it was very fuzzy in the transcript that I saw as to when she thought the alleged beating had happened. It absolutely was, Judge, but it was between 11 and 12 on some day, two days ago. It was a day or two days. She thought it was Thursday, maybe two days ago would be Tuesday, but the officers knew from interviewing Mr. Fisher that she was at work on Tuesday. And the point here is that they interviewed Mr. Fisher. They gained the knowledge. I mean, your case law is very clear that while sometimes you can rely on a victim's report, sometimes you can rely on it exclusively, sometimes you can move forward. In this case, you are supposed to do a further investigation. They did the further investigation, and when they got to the home, they learned that everything, everything that Ms. Hathaway had said was false. And again, it's not because Charlie said it. We acknowledge in the brief if that was it, if it was an unsupported alibi, then the police absolutely had the right. But I think the point is the alibi for what day. It was unclear as to what I read at that moment of time at the day of the arrest as to when the alleged beating had happened. It was very fuzzy. I think one officer said to Mahan, who was training at the time, you're overthinking this. So your client won before a jury, right? But we're talking about something different here. We're talking about probable cause at that moment. Should he be arrested? That is not convicting someone beyond a reasonable doubt. But here's the interesting thing, Judge. Officer Mahan himself concluded that Charlie hadn't done it, that from what he saw. I didn't see that in the record. Yes. In the transcript? In the transcript. Okay. I saw a lot of hesitation by a young officer, and I saw his superior saying you're overthinking this, you're good. That's not exactly right. So Officer Lane, Officer Rose was the training officer, and he went out to the vehicle. He didn't take part at all in the interview of Charlie or what happened at the house. Officer Lane was there. Officer Lane hadn't been part of any of the interviews. And Officer Lane, based on nothing, he had conducted none of the interviews, just said to Officer Mahan at the end, make the arrest. Officer Mahan was hesitating. He was uncertain about it. But it's not Officer Mahan that we need to be focusing on, his subjective belief. We have to look at the totality and was it objectively reasonable, right? And it absolutely wasn't. Every item of evidence they got, starting with what Ms. Hathaway said, my boyfriend beat me up. It wasn't. It was an ex-boyfriend. And even the daughter didn't know. If it was true, the officers had doubts. And they did the right thing. But every single item of fact they learned after they interviewed Ms. Hathaway showed that her story was inaccurate. Every one. Everything from the day, from the time. Maybe it was Wednesday. Let me just move this along a little bit. Sure. So after they leave the hospital, where do they go? To meet with Mr. Fisher, the coworker. Mr. Fisher discloses what regarding the incident. That he had told her that she fell on black ice and that she had been injured already on Tuesday when she came to work. So Mr. Fisher already had an explanation for the injuries and was with her and had seen her on Tuesday. So when the officers approached the residence, Mr. Friend's residence, you're suggesting that they had probable cause? Oh, no. By the time they got to the mother's home, they didn't. Mr. Fisher had already clarified how she got her injuries and that it wasn't on Wednesday. It had happened previously. It couldn't have been Tuesday because she was at work. So now you're going back to Monday. But let me just make this point that's so troubling about this case. There's nothing to support Ms. Hathaway's. Everything, every fact learned after rebutted what Ms. Hathaway said. What about the history of domestic violence reports? Because I saw a reference to that before the arrest, that the officers knew that there had been some history. At least that's what they thought at that time. But by the time, if you look at the video or look at the transcripts from what happened in the car, they already knew by the time they got to Charlie's house there had never been an arrest. There was no history of domestic violence. Charlie had no record whatsoever, no arrest whatsoever of domestic violence. And it's in the sworn statement, which is a very important document, the sworn statement that Officer Mahan presents to the judge after the arrest to justify holding Charlie. So, I mean, every fact rebutted what Ms. Hathaway said. Everyone, no reasonable officer could have believed once they interviewed Charlie, once he was prepared to give them his record, no reasonable officer could have believed that he had done it. And Officer Mahan knew. Was there an arguable probable cause? It's neither. Officer Mahan knew. How can one say there was no arguable probable cause when a federal judge, after receiving evidence and arguments from the lawyers, found that there was actual probable cause? Do we hold officers in the field liable in damages for not being smarter than federal judges? I think, Your Honor, federal judges make mistakes, and I think... So do officers. But it seems to me that it would be very difficult to say that no reasonable officer could have believed X when a federal judge, after full litigation, found X to be true as a matter of law. And, unfortunately, the magistrate missed a number of points from the record. I understand that you disagree with the judge's conclusion. That's where we see all of our appeals. Every single appeal, somebody disagrees with the judge's conclusion. But do you think the judge is a reasonable person? I think he's a reasonable person. I think he made a mistake. And not because he didn't understand the facts that were before him. And so that's why I go back to my question originally of whether or not there was arguable probable cause. Can I reserve my time, or would you like me to answer the question now? Answer the question. Okay, sure. I'm happy to. There was no arguable probable cause because Officer Mahan himself knew from the investigation that... It's not subjective. We know that. It's objective. Well, I agree it's objective, but it's objective based on the knowledge of the person. Officer Lane had none of the information, and he was the one to say, make the arrest. Officer Lane was the one to say, make the arrest based on no information at all. So objectively what we have is a victim statement saying, this happened to me. We have a factual statement from the hospital saying that this is indicative of someone getting hit in the eye. We have evidence at the time from Ken that she doesn't know what happened. She's pretty much out of it, but she was bruised the day before. And we also have factual evidence that at the time that there was, at least from the incident report, history, domestic violence history. There just wasn't. The officer knew by the time... I'm not finished. I'm sorry. I'm sorry, Your Honor. It's fine. And so when you have these facts lined up objectively and you have a supervisor coming to tell the officer objectively, there is enough here for probable cause. So those are the facts objectively that the officer had in front of him when he made the decision to do the arrest. But the officer who made the decision to arrest was Officer Lane, and objectively the only thing they had was the testimony, was the statements of a drunk woman. That was it. And it was equally consistent with the fall on Black Ice, which she had said she had. I mean, really, if the duty to investigate means anything, it means when a drunk woman reports, and remember, too, she's expressing her jealousy, she's expressing her anger with Charlie, and then she accuses him of this. There is nothing else to support it. Not one iota of evidence. If this arrest is okay... I don't get it. I'm sorry. How can you say there's not one iota of evidence when somebody claiming to be a victim of domestic violence tells the police and her daughter and medical professionals that she was a victim of domestic violence? That is an iota of evidence, and then some. No, no, I'm sorry. We have a disagreement among the parties, but, of course, that's common in police work. Your Honor, just very simply, I didn't mean to say there was not one iota. That's exactly what you said. No, but what I meant to say was there's not one iota of evidence supporting the report by Ms. Hathaway. Not one. Everything they found out afterwards showed that she was an accurate slasher. So the medical professional said this was not an injury consistent with being punched in the face? The medical professional said that the injury observed was consistent with the report of being punched in the face. Now, if the medical professional had said, no, this was consistent only with a fall and not with a punch, I could see your position, but that's not what was said to the police. Right. It could have been consistent with either, and that's why they did the investigation. I'll yield my time. Thank you, Your Honor. Mr. Stocks. Thank you, Your Honor. Jerry Stocks on behalf of the City of Decatur, Officers Mahan, Rose, and Lane. It pleased the court and counsel. Probable cause case, we look to the objective officer and the totality of circumstances and evidence before them. Here is what was known to the arresting officer by the time he made his arrest on the 12th of February. He had a victim, alleged victim, found in her apartment. Alcohol present. She was also very confused. Her friend, Mr. Fisher, called the daughter. Fisher would be subsequently interviewed. And an officer, Claypool, who is not a defendant in this case, went to that scene and was interviewing and trying to determine what had happened. He reports on dispatch that Mahan hears that there had been, she was beaten up badly, she was confused, disoriented, not only did not know what day it was, did not know what month it was, and was saying her boyfriend did it, Charlie Friend. At that moment, probable cause existed. And then this case becomes really one of a theory of lost probable cause. But as we marched through the timeline of events, an objective officer's reasonable basis to arrest only got stronger. And we then go to the hospital. The doctors are interviewing the victim. The officers first observe black eyes, bruised forehead, bruised arms, bruised knee, hardly consistent with the discreet fall on ice. In fact, later in the record you hear a discussion about the ginormity of hands that would have been necessary to effect this beating on this female in a hospital, which is in and of itself validating of a severe, serious injury consistent with the battery. The premise of the appellants is that it had to be either all black eyes or either all battery. I think what we're hearing this morning, though, is that probable cause was lost after leaving the hospital, speaking with Ken Fisher, speaking with Charlie Friend, the officer maybe no longer had probable cause. That is, I think, stated better. That is their contention. However, they misstate the record in the interview of Ken Fisher. It's certainly when you deviate from what the evidence is and argue characterizations, conclusions, the spin we have, it's a lot different. Ken Fisher's testimony is in the transcribed record, roughly pages 5079 through 5083, and contrary to the representation just made, he reported that she never told him when the black eye occurred. She never told him how the black eye was caused. He even described that the appearance, the manifestation of injuries, had taken place over a course of days. He knew that they had had, in that transcribed statement, had commented about their rough history. So taken red as a whole and applied item by item, the record actually does not support the argument that was just presented. Ken Fisher actually, the significance of his testimony in the totality of circumstances to the objective officer, expanded the timeline. Expanded the timeline for the manifestation of injury far broader than the one-hour alibi that Mr. Friend wants to rely upon. Make one other note that is apparent in this stipulated transcribed record. So the universe of facts that were known to this objective officer have been stipulated to. It doesn't mean the versions that show up in the appellant's brief. It's there in black and white, all derived from body-worn camera. So we don't have a fact dispute here. We really have a legal conclusion to draw upon a universe of facts that the parties have stipulated to. Something happened to her between Tuesday and Friday. At least that time frame, at least, because some of the injury had manifest by Tuesday. So at least that timeline. The charge here is domestic battery. So proximate cause looks to, does that officer have reason to believe that the crime has been committed and that the person about to be arrested committed the crime? So the crime is the what. The who did it is the who. Those are the two elements of domestic battery. The when is not a necessary element of the domestic battery charge. And in fact, often a person may be arrested, the date or time is wrong, and you have a far broader timeline and probable cause is not lost. In fact, an amended information or indictment does not negate the prosecution if a different or broader time frame is presented. But as to the domestic battery charge, with respect to Mr. Friend, the who, the fact of a recent dating relationship is expressly within the four corners of who could be guilty of a domestic battery charge. So it's canard to go off and say, well, they weren't dating anymore. That's irrelevant. The statute still held him exposed to a domestic battery prosecution because of the ex-dating relationship, which had only ended a few weeks earlier. I think it was January. Everybody agreed it was January. This happens in February. Is there no history in the record, though, of domestic violence? The RMS, which is the reporting... What does RMS stand for? It is... Oh, gosh. I can't answer that accurately. It is the reporting system that historical reports of claims exist that the city of Decatur has access to. So there was a 2017 history of an RMS report. Now, that is a report. It's not... It doesn't establish the truth of an actual battery at the time. It reports only that someone within that relationship had reported to the police, and there was a call that the police responded to to one of the parties regarding a domestic abuse complaint. But that is still information available to an officer. I mean, the officer can't become the trier of fact in the field. And that RMS report is part of the constellation of facts or information. I mean, we sometimes trip over facts. The officers react to information. I mean, a lot of the information they get may be hearsay or this. So we're not trying, at the probable cause level, to make an arrest. You can't... No officer will ever make an arrest again if the consequences of their actions is they had to try the case. So when you get into, say, the universe of lost probable cause, you're really impelling that officer to become a trier of the facts that are being presented to him as opposed to evaluating the reasonableness of the information available to him. And respectfully submit that that is not what the law requires in the reported case law. You know, the Fourth Amendment doesn't get any broader for Charlie Friend because I had a rookie, incompetent officer, nor does it become any more restrictive because I had an alleged rookie officer that was just in training. You look to the universe of facts available to all of the officers and the subjective musings, questions, concerns. If anything, this training officer had questions, and he did follow up. He did not ignore. He wasn't the cynical, look-at-this-hospitalized-injured-person-who-sang-Charlie-Friend-beat-her-up and said, that's good enough for me. So we're going to punish this officer for taking the next step to try to determine, is there something I'm missing? Is there more to the story? He talks to the daughter. The daughter says, Mom says he beat her up. They have a rough history. Talks to Ken Fisher. He expands the timeline. Really, am I in this one hour from a witness that really couldn't handle the when, was confused, disoriented, perhaps alcohol, perhaps the fact she had some serious closed-head injuries because of ginormous hands, as described, had beaten her in the head. There could be many explanations for her disorientation. In the Riccio case we cited, the fact that she was intoxicated in a domestic battery setting is not sufficient to determine that the reporting victim is not qualified to be relied upon by a reasonable officer. We found that case. They want to contest her qualified immunity. They offer no analogues, nothing analogous to what we are confronting in this case. So, yes, she was confused on the when, but that did not take away probable cause on the elements of the offense. The timeline did expand. If Charlie Friend had an alibi for his one hour that he was prepared to assert, that is not exculpatory of the full timeline that this offense could have occurred. One other item is that, and maybe it's in the reported and transcribed events, is that before Officer Mahan ever talked to Charlie Friend, Charlie Friend knew all the complaints against him. The victim's son called Charlie Friend and actually gave the idea of the timeline they were investigating. The fact of the matter is, Charlie, and this will get into the consent issue, which counsel did not address, but I don't want to leave untouched in my comments, but Charlie knew. Charlie rolled the dice. He thought that he could explain his way out because he knew that he had an alibi for that one hour and that he was going to exploit the confusion of the victim and try to say, well, here's where I was during that hour and then to use that as the means or the basis to unravel everything. He was really saying, you didn't investigate more because you didn't go talk to my supervisor at work. We didn't need to. The one hour was not exculpatory of the probable cause for the domestic battery. So Charlie, when he's talking to Mahan, wants to declare that there is a lie that Mahan said to Charlie to try to get entry into the home, and this comes into the Hadley case, its analysis, but it's really important that the content of that statement be understood because it is misrepresented in the appellant's brief. Mahan said in a second communication, if there was no reason that you committed domestic battery, a conditional, then I don't see why you couldn't meet up with me and then we just hash this out, get you on your way. Now, that's in the record, pages 5109 to 5111. In the statement of facts of the statement of case of the appellant, only the get you on your way is recited in the facts. Well, that is a communication taken entirely out of context. There is no evidence that that was ever communicated to the mother, the owner of the home, that gave the consent. In fact, she gave a declaration, and this informed the basis for their post-judgment relief they sought, that he never told her that. Now, Hadley says you can cajole, misrepresent, trick, you just can't have an outright lie. In the Hadley case, the outright lie was implying that they had a warrant, and so you created a futility. So once you, if an officer tells the homeowner, hey, I've got a warrant, I'm coming anyway, there's a futility to denying consent. It's not happened here. The communications show there was no coercive force. There was no suggestion of an outright lie that you had a warrant. And what get you on your way means, if I wanted to be snarky, I'd say get you on your way to jail. But I would assume that the implication is get you on your way back home. I think that's unreasonable. But it is a promise as to a future act. It is not a fraud. Charlie Friend was not coerced. He had previously said, if you believe the victim, I'm going to jail. He knew, well understood, what he was facing if he spoke to the police. And they told his story to them, and that is still found probable cause. And so we respectfully submit, as I see my time expiring, that the district court be affirmed. The consequences of not affirming really imposes a duty upon our officers to try lawsuits, try cases out on the street, and that will chill law enforcement. Thank you. Thank you, counsel. The case is taken under advisement.